## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KRESTON EOFF,

      Plaintiff,

vs.                                                                  No. CIV 10-0598 JB/RHS

NEW MEXICO CORRECTIONS
DEPARTMENT,

      Defendant.                                   consolidated with

NHAN NGUYEN,

      Plaintiff,

vs.                                                                  No. CIV 10-0599 JB/DJS

NEW MEXICO CORRECTIONS
DEPARTMENT,

      Defendant.                                   consolidated with

OSWALDO SOVERANES,

      Plaintiff,

vs.                                                                  No. CIV 10-0600 JB/WDS

NEW MEXICO CORRECTIONS
DEPARTMENT,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Dismiss

Plaintiffs' State Law Claims Under Rules 12(b)(1) and 12(b)(6) and Supporting Memorandum, filed

July 16, 2010 (Doc. 8)("Motion to Dismiss"); and (ii) the Defendant's Motion to Dismiss Plaintiff

Nhan Nguyen's New Mexico Human Rights Act Claim Under Rules 12(b)(1) and 12(b)(6) and Supporting Memorandum, filed July 27, 2010 (Doc. 9)("NMHRA Motion to Dismiss"). The Court held a hearing on September 21, 2010. The primary issues are: (i) whether the Plaintiffs' common-law breach-of-contract claims are barred and fail to state claims upon which the Court may grant relief, because the New Mexico State Personnel Act, NMSA 1978, §§ 10-9-1 to 10-9-25 ("State Personnel Act"), is the exclusive remedy for such claims or because they were not timely filed pursuant to the applicable statute of limitations; and (ii) whether the Plaintiffs' breach-of-implied-covenant-of-good-faith claims are barred and fail to state claims upon which relief can be granted, because, to the extent that the claims sound in contract, the State Personnel Act is the exclusive remedy for such claims and, to the extent that the claims sound in tort, sovereign immunity under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 to 41-4-30 ("NMTCA"), bars them. The Court will dismiss the Plaintiffs' claims for breach of contract, because the State Personnel Act is the exclusive remedy for such claims. The Court need not address whether the Plaintiffs' breach-of-contract claims were timely filed, but the Court believes that, as pled, the claims were not timely filed. The Court finds that the Plaintiffs' claims for breach of implied covenant of good faith and fair dealing sound in contract, not in tort, and are barred, because the State Personnel Act is the exclusive remedy for such claims. The Court will therefore dismiss the Plaintiffs' breach-of-implied-covenant-of-good-faith-and-fair-dealing claims. The Court will also dismiss the Plaintiffs' claims for wrongful termination and Nguyen's claim under the NMHRA, because the Plaintiffs have conceded that the Court should dismiss these claims.

## FACTUAL BACKGROUND

The underlying factual allegations in all three Complaints are essentially identical. See Eoff's Complaint for Damages and Jury Demand ¶¶ 1, 23, 26-45, 49, 58, at 1-10, filed June 22, 2010

(Doc. 1-1)("Eoff Complaint"); Nguyen's First Amended Notice of Appeal and Complaint for Damages ¶¶ 1, 24, 28-47, 52, 61, at 1-10, filed June 22, 2010 (Doc.1-7)("Nguyen Am. Complaint"); Soveranes' Complaint for Damages and Jury Demand ¶¶ 1, 23, 26-43, 47, 56, at 1-10, filed June 22, 2010 (Doc.1-1)("Soveranes Complaint"). Each Plaintiff alleges that the New Mexico Corrections Department ("NMCD") employed him as a corrections officer and that he was a classified employee at the time of the events in question. See Soveranes Complaint ¶¶ 1, 11, at 1, 2; Nguyen Am. Complaint ¶¶ 1, 12, at 1, 2; Eoff Complaint ¶¶ 1, 11, at 1, 2. Each Plaintiff alleges that an employment contract protected him. See Eoff Complaint ¶ 49, at 8; Nguyen Am. Complaint ¶ 52, at 9; Soveranes Complaint ¶ 47, at 8.

Each Plaintiff alleges that the NMCD conducted an investigation following an alleged assault on an inmate. See Eoff Complaint ¶ 32, at 5; Nguyen Am. Complaint ¶ 34, at 5; Soveranes Complaint ¶ 31, at 5. Each Plaintiff alleges that he received a Notice of Contemplated Action ("NCA") from the NMCD. See Eoff Complaint ¶ 27, at 4; Nguyen Am. Complaint ¶ 29, at 5; Soveranes Complaint ¶ 27, at 4. The Plaintiffs allege that Plaintiff Kreston Eoff and Plaintiff Oswaldo Soveranes appeared before Warden George Tapia to provide an oral response to the NCA in February of 2008. See Eoff Complaint ¶ 42, at 7; Nguyen Am. Complaint ¶ 44, at 8 (alleging that Eoff appeared before Tapia to provide an oral response to the NCA); Soveranes Complaint ¶ 39, at 7.   Each Plaintiff alleges that, on March 3, 2008, he received a Notice of Final Action ("NFA") from the NMCD terminating his employment effective March 6, 2008. See Eoff Complaint ¶ 26, at 4; Nguyen Am. Complaint ¶ 28, at 4; Soveranes Complaint ¶ 26, at 4. Each Plaintiff alleges that the NFA noted that the Plaintiffs had been unprofessional and had acted inconsistently with their obligations as a correctional officer. See Soveranes Complaint ¶¶ 34-37, at 6-7; Nguyen Am. Complaint ¶¶ 38-41, at 6-7; Eoff Complaint ¶¶ 36-39, at 6. Each Plaintiff alleges that Tapia relied

heavily on polygraph evidence and hearsay evidence to conclude that the Plaintiffs should be terminated.  See Soveranes Complaint ¶¶ 44-45, at 8; Nguyen Am. Complaint ¶¶ 48-49, at 8; Eoff Complaint ¶¶ 46-47, at 8.

## PROCEDURAL BACKGROUND

All three Plaintiffs filed their Complaints in the First Judicial District of New Mexico.  The NMCD removed each case, contending that the Court had federal-question jurisdiction over the Plaintiffs' equal-protection claims, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims.  See Nguyen Notice of Removal of Action by Defendants Pursuant to 28 U.S.C. Section 1331, 1441, 1443 and 1446 at 2, filed June 22, 2010 (Doc. 1); Soveranes Notice of Removal of Action by Defendants Pursuant to 28 U.S.C. Section 1331, 1441, 1443 and 1446 at 2, filed June 22, 2010 (Doc. 1); Eoff Notice of Removal of Action by Defendants Pursuant to 28 U.S.C. Section 1331, 1441, 1443 and 1446 at 2, filed June 22, 2010 (Doc. 1).  On July 15, 2010, Nguyen's case and Soveranes' case were consolidated with Eoff's case.  See Order Granting Unopposed Motion to Consolidate Cases, filed July 15, 2010 (Doc. 7).

In Count I, each Plaintiff alleges a claim for breach of contract, contending that the NMCD breached its employment contract with the Plaintiffs when it accused them of misconduct and terminated them without just cause.  See Nguyen Am. Complaint Count I, at 8-9; Soveranes Complaint Count I, at 8; Eoff Complaint Count I, at 8.  In each Plaintiff's Complaint, Count II is a claim for breach of implied covenant of good faith and fair dealing.  See Nguyen Am. Complaint Count II, at 9-10; Soveranes Complaint Count II, at 9; Eoff Complaint Count II, at 9.  In Count II, each Plaintiff alleges that the employment contract between the NMCD and the Plaintiffs had implied in law a covenant of good faith and fair dealing, which the NMCD breached when it falsely accused each Plaintiff of misconduct and proceeded with termination without just cause.  See Eoff

Complaint Count II, at 9; Soveranes Complaint Count II, at 9; Nguyen Am. Complaint Count II, at 9-10.  In Count III, each Plaintiff alleges a claim for wrongful discharge.  <u>See</u> Nguyen Am. Complaint Count III, at 10.  Soveranes Complaint Count III, at 9-10; Eoff Complaint Count III, at 9-10.  In Count IV, each Plaintiff alleges a claim pursuant to 42 U.S.C. § 1983 for violation of the equal-protection clause of the Fourteenth Amendment.  <u>See</u> Nguyen Am. Complaint Count IV, at 9-10; Soveranes Complaint Count IV, at 10; Eoff Complaint Count IV, at 10.  Plaintiff Nhan Nguyen's Amended Complaint also alleges a claim for violation of the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 to 28-1-4 ("NMHRA"), in Count V.  <u>See</u> Nguyen Am. Complaint Count V, at 11-12.

The NMCD now moves the Court, pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Plaintiffs' state-law claims -- specifically, their claims for breach of contract, wrongful discharge, and breach of implied covenant of good faith and fair dealing -- on the grounds that the Plaintiffs have failed to state claims upon which the Court may appropriately grant relief.  <u>See</u> Motion to Dismiss at 2.  The NMCD argues that: (i) the Plaintiffs' breach-of-contract claims fail to state claims upon which relief can be granted, because the New Mexico State Personnel Act is the exclusive remedy for such claims and, if the Plaintiffs could state claims, their claims would be time barred ; (ii) the Plaintiffs' wrongful discharge claims fail to state claims upon which relief can be granted, because, under New Mexico law, only an at-will employee may maintain a wrongful discharge claim and because the claim is a tort claim that sovereign immunity under the NMTCA bars; and (iii) the Plaintiffs' breach-of-implied-covenant-of-good-faith-and-fair-dealing claims are barred and fail to state claims upon which relief can be granted, because to the extent that the claims sound in contract, the State Personnel Act is the exclusive remedy for such claims, and to the extent that the claims sound in tort, sovereign immunity under

the NMTCA bars them.  <u>See</u> Motion to Dismiss at 2.

The NMCD also moves the Court, pursuant to rules 12(b)(1) and 12(b)(6), to dismiss Nguyen's claim under the NMHRA on the grounds that his claim is time-barred under NMSA 1978, § 28-1-13A, because he did not seek to appeal the New Mexico Human Rights Commission's determination of no probable cause in the allowed ninety day period after the Commission issued its determination.  <u>See</u> NMHRA Motion to Dismiss at 1-3.

The Plaintiffs responded to the NMCD's motions with a single response.  <u>See</u> Plaintiffs' Response to Defendant's Motion to Dismiss State Law Claims Pursuant to Rule 12(b)(6) and Memorandum in Support of Plaintiff's Response, filed August 23, 2010 (Doc. 12)("Response").  The Plaintiffs contend that the NMCD's exclusivity argument fails, because the State Personnel Board's decision ordering their reinstatement, back pay, and benefits could not make the Plaintiffs whole.  <u>See</u> Response at 10.  The Plaintiffs also state that their lawsuits, which were filed on March 5, 2010, are not time barred, because they were filed within two years after the effective date of termination for all three Plaintiffs -- March 6, 2008 --and because the notices were not postmarked until March 4, 2008, so they could not have received them until March 5, 2008.  <u>See</u> Response at 6.  In their Response, the Plaintiffs "concede that [their wrongful termination claims are] not actionable in their cases for the reasons stated by Defendant it its brief."  Response at 7.  The Plaintiffs also state that they intended to plead their implied-covenant claims as contract claims and not as tort claims.  <u>See</u> Response at 8.  They argue that the Court should not dismiss their implied-covenant claims, because the State Personnel Board's decision in their favor did not make them whole, so the State Personnel Act is not their exclusive remedy.  <u>See</u> Response at 8-9, 10.  Nguyen states that the Court should not dismiss his claim, but in any case, he should be allowed to amend his pleading.  <u>See</u> Response at 10.  He also argues that he timely appealed his charge filed with the

EEOC.  See Response at 10.

     At the hearing, Frank D. Weissbarth, NMCD's counsel, argued that the NMHRA states that a person aggrieved by an order of the New Mexico Human Rights Commission must appeal the order within ninety days of the Commission's determination.  See Transcript of Hearing at 14:23-25 (taken September 21, 2010)(Weissbarth)("Tr.").[1]  He argued that New Mexico law provides that a court must dismiss a NMHRA claim if the person aggrieved of the order does not appeal the order within ninety days.  See Tr. at 15:6-11 (Weissbarth).  Gilbert J. Vigil, the Plaintiffs' counsel, asserted that Nguyen filed a dual charge under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 200e to 200e-17, and the NMHRA, that he requested a substantial-weight review from the EEOC, and that he received a notice of nondetermination and notice of right to sue.  See Tr. at 15:14-22 (Vigil).  Mr. Vigil stated that he agreed with Mr. Weissbarth that Nguyen had only ninety days to appeal the New Mexico Human Rights Commission's decision, but argued that Nguyen's timely appealed within ninety days of the issuance of the order of nondetermination and notice of right to sue by the EEOC.  See Tr. at 15:23-16:5 (Vigil).  The Court asked Mr. Vigil whether he agreed that the NMHRA claim was untimely filed.  See Tr. at 16:6-9 (Court).  Mr. Vigil agreed that the NMHRA claim was untimely filed.  See Tr. at 16:10 (Vigil).  The Court stated that it would grant the Department of Correction's motion to dismiss Nguyen's NMHRA claim, because Mr. Vigil conceded that claim was not timely filed.  See Tr. at 16:12-16 (Court). Mr. Vigil also conceded that the Court should dismiss the Plaintiffs' wrongful-discharge claims.  See Tr. at 8:24-9:4 (Court, Weissbarth, Vigil).

     After the hearing, the NMCD submitted a supplemental brief in response to the Court's

_____

     [1] The Court's citations to the transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

questions regarding the Plaintiffs' claims for breach of implied covenant of good faith and fair dealing.  See Supplemental Brief in Support of Motion to Dismiss Plaintiffs' State Law Claims Under Rules 12(b)(1) and 12(b)(6), filed September 28, 2010 (Doc. 25)("Supplemental Brief").  In the supplemental brief, the NMCD discussed and distinguished the Court's prior opinion in City of Raton v. Arkansas River Power Authority, 611 F. Supp. 2d 1190 (D.N.M. 2008)(Browning, J.).  See Supplemental Brief at 2-4.

## LAW REGARDING RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citation omitted).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).  A complaint challenged by a rule 12(b)(6) motion to dismiss does not need to set forth detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements").  To survive a motion to dismiss, a plaintiff's complaint

must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its

face.  See Bell Atl. Corp v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995 (10th Cir.

2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

129 S. Ct. at 1940.

## RELEVANT LAW REGARDING THE STATE PERSONNEL ACT

"The purpose of the [State] Personnel Act is to establish for New Mexico a system of

personnel administration based solely on qualification and ability, which will provide greater

economy and efficiency in the management of state affairs."  NMSA 1978, § 10-9-2.  The State

Personnel Act "cover[s] all state positions," with several exceptions -- for example, officials elected

by popular vote, directors of department divisions, those in educational institutions and public

schools, those in the governor's office, those in the judicial branch of government, and those in the

legislative branch of government.  NMSA 1978, § 10-9-4.  The State Personnel Act provides:

> An employee who is dismissed, demoted or suspended may, within thirty
> days after the dismissal, demotion or suspension, appeal to the board. . . . .
>
> . . . .
>
> If the board finds that the action taken by the agency was without just cause,
> the board may modify the disciplinary action or order the agency to reinstate the
> appealing employee to the employee's former position or to a position of like status
> and pay. . . .  When the board orders an agency to reinstate an appealing employee,
> the reinstatement shall be effective within thirty days of the board's order.  The board
> may award back pay as of the date of the dismissal, demotion or suspension or as of
> the later date as the board may specify.
>
> A party aggrieved by the decision of the board made pursuant to this section
> may appeal the decision to the district court pursuant to the provisions of Section
> 39-3-1.1 NMSA 1978.

NMSA 1978, § 10-9-18.  Section 39-3-1.1 provides for appeal of final decisions by agencies to the

district court.  See NMSA 1978, § 39-3-1.1.  Section 39-3-1.1 states that "a person aggrieved by a final decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of filing of the final decision."  NMSA 1978, § 39-3-1.1C.  The district court may set aside, reverse, or remand the agency's final decision if it determines that: (i) "the agency acted fraudulently, arbitrarily or capriciously;" (ii) "the final decision was not supported by substantial evidence;" or (iii) "the agency did not act in accordance with law."  NMSA 1978, § 39-3-1.1D.

1.      **Implied Employment Contracts and the State Personnel Act.**

"The general rule in New Mexico is that an employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise."  Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776, 779 (1993)(citation omitted).  Either party can terminate an at-will employment relationship "at any time for any reason or no reason, without liability."  Hartbarger v. Frank Paxton Co., 115 N.M. at 668, 857 P.2d at 779 (citation omitted).  New Mexico courts have recognized "an exception to at-will employment for an implied contract based on the words and conduct of the parties, including provisions in a personnel manual or a handbook."  Newberry v. Allied Stores, Inc., 108 N.M. 424, 426, 773 P.2d 1231, 1233 (1989)(internal citations omitted).  A personnel manual or handbook "will not always change the at-will employment relationship if the manual or handbook is not sufficiently specific."  Newberry v. Allied Stores, Inc., 108 N.M. at 426, 773 P.2d at 1233 (citation omitted).  "Under New Mexico law, a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined."  Newberry v. Allied Stores, Inc., 108 N.M. at 426, 773 P.2d at 1233

(citation omitted).    The Supreme Court of New Mexico has held that an implied contract of employment between a government employee and government employer may arise from writings that are sufficiently concrete in their representations -- such as an employee handbook or a personnel policy.  See Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 731-32, 918 P.2d 7, 11-12 (1996).  In Barreras v. State of New Mexico Corrections Department, 133 N.M. 313, 62 P.3d 770 (Ct. App. 2002), the Court of Appeals of New Mexico recognized that the State Personnel Act, along with its attendant rules and regulations, have "attributes of an employ[ment] contract, because they control the employer-employee relationship and give rise to reasonable employee expectations."  Barreras v. State of N.M. Corrs. Dep't, 133 N.M. at 315, 62 P.3d at 772 (internal quotation marks and citation omitted).  The Court of Appeals stated that "the State Personnel Act and [its] attendant rules, regulations, and policies" create "enforceable rights in state employees." Barreras v. State of N.M. Corrs. Dep't, 133 N.M. at 315, 62 P.2d at 772.

2.    **Exclusivity of Remedies.**

The Supreme Court of New Mexico has addressed the exclusivity-of-remedies doctrine in the context of the NMHRA.  In Gandy v. Wal-Mart Stores, Inc., 117 N.M. 441, 872 P.2d 859 (1994), the Supreme Court found that the New Mexico Legislature did not intend for the NMHRA's remedies to be exclusive; therefore, exhaustion of "administrative remedies under the Act [is] not a prerequisite to proceeding with an independent tort claim."  117 N.M. at 444, 872 P.2d at 862.  The Supreme Court stated that, absent language in the NMHRA "stating that its remedies are intended to be exclusive," it would not infer a "legislative intent to preempt tort claims unless such intent is clearly demonstrated by the comprehensiveness of the administrative scheme and the completeness of the remedy it affords."  117 N.M. at 443, 872 P.2d at 860.  The Supreme Court found that, although the NMHRA provided "an efficient, sensible, and comprehensive scheme for remedying

-11-

violations of the rights it protects," it did not afford the same remedies that were potentially available under the "tort of retaliatory discharge." 117 N.M. at 443, 872 P.2d at 860. The Supreme Court noted that a plaintiff could recover attorney's fees under the NMHRA, but could not recover punitive damages under the Act. See 117 N.M. at 443, 872 P.2d at 860. "Because the language of the Act is permissive and contains no declaration that the remedies it provides are exclusive, and because the remedies provided in the Act are not the same as the remedies available in a tort action for retaliatory discharge, we hold that the legislature did not intend the Act's remedies to be exclusive." 117 N.M. at 443-44, 872 P.2d at 860-61.

A case from the Court of Appeals of New Mexico has addressed whether the State Personnel Act provides the exclusive remedy for state employees who are alleging contract claims, seeking to vindicate rights created in, or arising from, the State Personnel Act and its attendant rules, regulations, and personnel policies. In Barreras v. State of New Mexico Corrections Department, the Court of Appeals held that, "when [a state] employees's contractual claim arises from the State Personnel Act, as well as attendant rules, regulations, and agency personnel policies, the employee's remedies are limited to those set forth in the State Personnel Act." 133 N.M. at 315, 62 P.3d at 772. To reach this conclusion, the Court of Appeals considered whether the Legislature intended the State Personnel Act to be the exclusive remedy for state employees alleging contract claims based on rights created in the Act. See 133 N.M. at 316, 62 P.3d at 773. The Court of Appeals recognized that the basic purpose of the State Personnel Act was to further economy and efficiency in state government. See 133 N.M. at 316, 62 P.3d at 773. The Court of Appeals stated:

> In our view, Plaintiffs' attempt to bypass administrative procedures of the State Personnel Act does not advance either economy or efficiency in state government. We doubt that the legislature, having created the SPB to adjudicate employer-employee disputes under the Act, intended dual tracks for aggrieved employees, one administrative and the other by direct action in court, or thought dual

-12-

remedies would "provide greater economy and efficiency in the management of state affairs." Section 10-9-2.

133 N.M. at 316, 62 P.3d at 773.

The Court of Appeals of New Mexico stated that, because the State Personnel Act contains no "express language that its administrative remedies either are, or are not, exclusive," it must "assess several factors in determining whether the Act's administrative remedies prevail over a direct civil action for damages." 133 N.M. at 316, 62 P.3d at 773. The factors the Court of Appeals considered included: (i) "the comprehensiveness of the administrative scheme"; (ii) "the availability of judicial review"; and (iii) "the completeness of the administrative remedies afforded" in the State Personnel Act. 133 N.M. at 316, 62 P.3d at 773 (citations omitted). The Court of Appeals found that the State Personnel Act, and its attendant regulations and rules, were comprehensive and specific, allowing the State Personnel Board with both policy-making and quasi-judicial authority. See 133 N.M. at 316, 62 P.3d at 773. The Court of Appeals also compared

> the remedies made available to aggrieved employees under the State Personnel Act with the remedies otherwise available at common law for breach of contract. In court, a successful claimant for breach of employment contract may win compensatory damages. By contrast, the State Personnel Act authorizes an aggrieved employee to seek modification of an adverse employment action, including reinstatement and back pay, but it does not expressly provide for general compensatory damages.

> Although these remedies differ in certain respects, we do not view the differences as significant. From an economic perspective, the relief afforded in the State Personnel Act mirrors the core of what is ordinarily available as compensatory damages in a breach-of-employment-contract lawsuit. . . . Punitive damages are not authorized in the State Personnel Act, but in any event they would not be available in a breach-of-contract action against a state agency.

> To the extent that remedies under the State Personnel Act may, in some instances, be less than what an aggrieved employee might recover in court, such restrictions reflect a legislative effort to balance the economic security needs of public employees with prudential considerations for protecting the public treasury. We would seriously skew that balance if we were to infer that the legislature

-13-

intended employees to pursue an alternative, and more expensive, avenue for breach of contract to enforce those same rights.

Plaintiffs lean heavily on <u>Gandy[ v. Wal-Mart Stores, Inc.</u>], 117 N.M. 441, 872 P.2d 859, to argue that the administrative remedies and procedures afforded in the State Personnel Act are not exclusive.  Plaintiffs note that the statutory appeal to the [State Personnel Board] is phrased in permissive, not mandatory language.  <u>See</u> § 10-9-18(A) ("An employee who is dismissed, demoted or suspended may . . . appeal to the board.").  Plaintiffs use that statutory distinction to argue against any requirement that they proceed before the [State Personnel Board] in lieu of a direct action in district court.

We see significant differences between the case before us and <u>Gandy[ v. Wal-Mart Stores, Inc.</u>].  In that case, the employer argued that the Human Rights Act, which prohibited an employer from engaging in reprisals, preempted an employee's tort claim for retaliatory discharge.  Understandably, our Supreme Court expressed great reluctance "to infer a legislative intent to preempt tort claims unless such intent is clearly demonstrated by the comprehensiveness of the administrative scheme and the completeness of the remedy it affords."  <u>Gandy[ v. Wal-Mart Stores, Inc.</u>], 117 N.M. at 443, 872 P.2d at 861.

Torts are different.  Unless preempted by statute, common law courts typically decide, as a matter of judicial policy, the circumstances under which one owes a duty of care to another, the contours of that duty, and what constitutes its breach.  <u>See</u> <u>Torres v. State</u>, 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) ("Policy determines duty.").  We have previously said as much in a context similar to the case at bar.  <u>See</u> <u>Phifer v. Herbert</u>, 115 N.M. 135, 138, 848 P.2d 5, 8 (Court. App. 1993) ("[T]he requirement that administrative remedies for employment discrimination claims recognized by statute be exhausted does not prevent an employee from filing a complaint based on a common law tort without first resorting to such administrative remedies.").

In the case before us, however, Plaintiffs' claims arise in contract, not in tort, based on the rights accorded Plaintiffs in the State Personnel Act and attendant rules, regulations, and personnel policies.  Plaintiffs' contract claims are centered in the State Personnel Act and seek to vindicate essentially the same rights created in, and arising from, the State Personnel Act and attendant rules, regulations, and personnel policies.

No case cited to us by Plaintiffs . . . allows a separate lawsuit in contract, bypassing administrative remedies, under similar circumstances.  If this were an independent lawsuit in tort, instead of a mirror reflection of the State Personnel Act, we would rely heavily on <u>Gandy[ v. Wal-Mart Stores, Inc.]</u> in considering whether the Act allowed it.  However, when Plaintiffs base their claim for relief on rights granted by the legislature, we hold that the State Personnel Act provides the

-14-

> exclusive remedy for Plaintiffs' breach-of-contract claims based on that same Act. Thus, Plaintiffs were required to proceed administratively before the [State Personnel Board]. Having declined to appeal their dismissal from the [State Personnel Board], Plaintiffs are barred from obtaining further relief from the courts.

133 N.M. at 317-18, 62 P.3d at 775-76 (internal citations omitted).

## RELEVANT LAW REGARDING THE NEW MEXICO TORT CLAIMS ACT

The New Mexico Tort Claims Act provides: "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978." NMSA 1978, § 41-4-4. Section 41-4-12 states:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978, § 41-4-12. The NMTCA defines "law enforcement officer" as

> a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

NMSA 1989, § 41-4-3D.

## RELEVANT NEW MEXICO LAW REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

New Mexico courts have recognized a cause of action for breach of the covenant of good faith and fair dealing sounding in contract. "New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." Sanders v. FedEx Ground Package Sys., Inc., 144 N.M.

449, 452, 188 P.3d 1200, 1203 (2008)(citations omitted).  "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement."  Watson Truck & Supply Co., Inc. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990)(citations omitted). "The implied covenant is aimed at making effective the agreement's promises[;] [t]hus, it is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party."  Sanders v. FedEx Ground Package Sys., Inc., 144 N.M. at 452 188 P.3d at 1203.

The Supreme Court of New Mexico has recognized that "[t]he strongest basis for permitting tort recovery for breach of the implied covenant is in the insurance context and has been founded largely upon the existence of a special relationship between insurer and insured."  Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994)(internal quotation marks and citation omitted).  Relying on this language from the Supreme Court, the Court of Appeals of New Mexico has stated: "The claim of breach of good faith and fair dealing sounds in contract, at least when no 'special relationship' such as that between an insured and insurer exists."  Heimann v. Kinder-Morgan CO2 Co., L.P., 140 N.M. 552, 558, 144 P.3d 111, 117 (Ct. App. 2006)(citing Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 872 P.2d 852).

## ANALYSIS

The Court will dismiss the Plaintiffs' claims for breach of contract, because the State Personnel Act is the exclusive remedy for such claims.  The Court finds that the Plaintiffs' claims for breach of implied covenant of good faith and fair dealing sound in contract, not in tort, and are barred because the State Personnel Act is the exclusive remedy for such claims.  The Court will therefore dismiss the Plaintiffs' breach-of-implied-covenant-of-good-faith-and-fair-dealing claims. The Court will also dismiss the Plaintiffs' claims for wrongful termination and Nguyen's claim

-16-

under the NMHRA, because the Plaintiffs have conceded that the Court should dismiss these claims.

## I.  THE COURT WILL DISMISS THE PLAINTIFFS' BREACH-OF-CONTRACT CLAIMS.

The NMCD argues that the State Personnel Act constitutes an implied employment contract between state employees and their respective employers, and that New Mexico law provides that the State Personnel Act provides the exclusive remedy for a classified state employee who contends that his employer breached the terms of the employment contract.  Moreover, the NMCD alleges that, even if the Plaintiffs could maintain common law breach of contract claims against the Department, they would be time-barred, because the statute of limitations for contract claims against the State of New Mexico is two years, and the Plaintiffs did not file suit within two years of receiving notice of final actions terminating their employment.

The Plaintiffs respond, alleging that the exclusivity-of-remedies doctrine does not bar their state-law contract claims.  They contend that Barreras v. State of New Mexico Corrections Department does not apply to bar their claims, because they had no reason to appeal the final decision of the State Personnel Board, because they received favorable decisions from the Board, ordering their reinstatement with back pay and benefits.  The Plaintiffs also contend that the Board had authority only to grant reinstatement with back pay and benefits, and that the decision did not make them whole, because they also suffered loss of future overtime opportunities and emotional distress damages, having to pay back unemployment benefits and loans, and having to pay attorney fees and costs.  For these reasons, the Plaintiffs assert that the exclusivity-of-remedies doctrine does not bar their state-law contract claims.  The Plaintiffs also assert that they timely filed their contract claims.  They contend that the notices of termination stated that their termination was not effective until March 6, 2008, and they filed their lawsuits on March 5, 2010.  The Plaintiffs moreover

contend that, notwithstanding that the notice was dated March 3, 2008, the notices were postmarked March 4, 2008, and were not received until after that date.

The Court finds that the Plaintiffs have sufficiently alleged that they had an implied employment contract with the NMCD.  The Court of Appeals of New Mexico has recognized that "the State Personnel Act and [its] attendant rules, regulations, and policies" can create an implied contract, because they control the employer-employee relationship and create "enforceable rights in state employees.  <u>Barreras v. State of N.M. Corrs. Dep't</u>, 133 N.M. at 315, 62 P.3d at 772.  Each Plaintiff alleges that the NMCD employed him as a corrections officer and that he was a classified employee at the time of the events in question.  None of the Plaintiffs fall under the exceptions listed in the State Personnel Act as positions that the Act does not cover.  <u>See</u> NMSA 1978, § 10-9-4.  The Court finds that the Plaintiffs have alleged that they were state employees, covered by the State Personnel Act.  Because the Court of Appeals of New Mexico has recognized that the State Personnel Act can create an implied employment contract, as it creates enforceable rights in state employees, the Court finds that the Plaintiffs have sufficiently alleged that they had an implied employment contract with the NMCD.

The Court will dismiss the Plaintiffs' breach-of-contract claims, because it finds that, under New Mexico law, the State Personnel Act provides the exclusive remedy for their claims.  The Court of Appeals of New Mexico has addressed whether the State Personnel Act provides the exclusive remedy for state employees who are alleging contract claims, seeking to vindicate rights created in, or arising from, the State Personnel Act and attendant rules, regulations, and personnel policies.[2]

---

[2] The Tenth Circuit has explained:

In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain

In Barreras v. State of New Mexico Corrections Department, the Court of Appeals held that, "when

[a state] employees's contractual claim arises from the State Personnel Act, as well as attendant

rules, regulations, and agency personnel policies, the employee's remedies are limited to those set

forth in the State Personnel Act."  133 N.M. at 315, 62 P.3d at 772.  In that case, the NMCD

discharged the Plaintiffs.  See 133 N.M. at 315, 62 P.3d at 772.  The Plaintiffs proceeded under the

State Personnel Act and filed appeals of their discharge with the State Personnel Board.  See 133

N.M. at 315, 62 P.3d at 772.  The Plaintiffs later filed a motion to stay the State Personnel Board's

hearing or withdraw their appeal to the State Personnel Board without prejudice so that they could

proceed directly to district court.  See 133 N.M. at 315, 62 P.3d at 772.  "By filing a lawsuit in

district court, Plaintiffs hoped to avoid potential limitations on the relief available from the

SPB . . . ."  133 N.M. at 315, 62 P.3d at 772.  The State Personnel Board denied the Plaintiffs'

motion and dismissed their appeal with prejudice.  See 133 N.M. at 315, 62 P.3d at 772.  After the

dismissal, the Plaintiffs filed a complaint in district court for breach of contract, among other claims.

---

and apply the state law.  The federal court must follow the most recent decisions of
the state's highest court.  Where no controlling state decision exists, the federal court
must attempt to predict what the state's highest court would do.  In doing so, it may
seek guidance from decisions rendered by lower courts in the relevant state, appellate
decisions in other states with similar legal principles, district court decisions
interpreting the law of the state in question, and the general weight and trend of
authority in the relevant area of law.  Ultimately, however, the Court's task is to
predict what the state supreme court would do.

Wade v. Emcasco Ins. Co., 483 F.3d 657, 665-66 (10th Cir. 2007)(citations and internal quotation
marks omitted).  Although Barreras v. State of New Mexico Corrections Department is a Court of
Appeals case, the Court believes that the Supreme Court of New Mexico would adopt the analysis
used by the Court of Appeals, because the Court of Appeals thoroughly analyzed the New Mexico
Legislature's intent in enacting the State Personnel Act, the language of the State Personnel Act, and
public policy.  The Court also notes that the Supreme Court of New Mexico denied certiorari in
Barreras v. State of New Mexico Corrections Department.  See Barreras v. State Corrs. Dep't, 133
N.M. 413, 63 P.3d 516 (2003)(Table).

See 133 N.M. at 315, 62 P.3d at 772.

In addressing whether the Plaintiffs' breach-of-implied-contract claim was barred, the Court of Appeals of New Mexico first considered whether the New Mexico Legislature intended the State Personnel Act to be the exclusive remedy for state employees alleging contract claims based on rights created in the Act.  See 133 N.M. at 316, 62 P.3d at 773.  The Court of Appeals recognized that the basic purpose of the State Personnel Act was to further economy and efficiency in state government.  See 133 N.M. at 316, 62 P.3d at 773.  The Court of Appeals stated:

> In our view, Plaintiffs' attempt to bypass administrative procedures of the State Personnel Act does not advance either economy or efficiency in state government. We doubt that the legislature, having created the SPB to adjudicate employer-employee disputes under the Act, intended dual tracks for aggrieved employees, one administrative and the other by direct action in court, or thought dual remedies would "provide greater economy and efficiency in the management of state affairs."  Section 10-9-2.

133 N.M. at 316, 62 P.3d at 773.

The Court of Appeals of New Mexico stated that, because the State Personnel Act contains no "express language that its administrative remedies either are, or are not, exclusive," it must "assess several factors in determining whether the Act's administrative remedies prevail over a direct civil action for damages."  133 N.M. at 316, 62 P.3d at 773.  The factors the Court of Appeals considered included: (i) "the comprehensiveness of the administrative scheme"; (ii) "the availability of judicial review"; and (iii) "the completeness of the administrative remedies afforded" in the State Personnel Act.  133 N.M. at 316, 62 P.3d at 773 (citations omitted).  The Court of Appeals found that the State Personnel Act and its attendant regulations and rules were comprehensive and specific, endowing the State Personnel Board with both policy-making and quasi-judicial authority.  See 133 N.M. at 316, 62 P.3d at 773.  The Court of Appeals believed that the comprehensiveness and specificity of the Act go a long way toward demonstrating

-20-

that the legislature intended its scheme to be exclusive, at least when the employee seeks to vindicate those same rights by another avenue.  We also find it significant that the State Personnel Act makes express provision for judicial review of SPB decisions.

133 N.M. at 317, 62 P.3d at 774.  The Court of Appeals also compared

the remedies made available to aggrieved employees under the State Personnel Act with the remedies otherwise available at common law for breach of contract.  In court, a successful claimant for breach of employment contract may win compensatory damages.  By contrast, the State Personnel Act authorizes an aggrieved employee to seek modification of an adverse employment action, including reinstatement and back pay, but it does not expressly provide for general compensatory damages.

Although these remedies differ in certain respects, we do not view the differences as significant. From an economic perspective, the relief afforded in the State Personnel Act mirrors the core of what is ordinarily available as compensatory damages in a breach-of-employment-contract lawsuit. . . . Punitive damages are not authorized in the State Personnel Act, but in any event they would not be available in a breach-of-contract action against a state agency.

To the extent that remedies under the State Personnel Act may, in some instances, be less than what an aggrieved employee might recover in court, such restrictions reflect a legislative effort to balance the economic security needs of public employees with prudential considerations for protecting the public treasury. We would seriously skew that balance if we were to infer that the legislature intended employees to pursue an alternative, and more expensive, avenue for breach of contract to enforce those same rights.

. . . .

In the case before us . . . Plaintiffs' claims arise in contract, not in tort, based on the rights accorded Plaintiffs in the State Personnel Act and attendant rules, regulations, and personnel policies. Plaintiffs' contract claims are centered in the State Personnel Act and seek to vindicate essentially the same rights created in, and arising from, the State Personnel Act and attendant rules, regulations, and personnel policies.

No case cited to us by Plaintiffs . . . allows a separate lawsuit in contract, bypassing administrative remedies, under similar circumstances. If this were an independent lawsuit in tort, instead of a mirror reflection of the State Personnel Act, we would rely heavily on Gandy in considering whether the Act allowed it. However, when Plaintiffs base their claim for relief on rights granted by the legislature, we hold that the State Personnel Act provides the exclusive remedy for Plaintiffs' breach-of-contract claims based on that same Act. Thus, Plaintiffs were required to

-21-

> proceed administratively before the SPB. Having declined to appeal their dismissal
> from the SPB, Plaintiffs are barred from obtaining further relief from the courts.

133 N.M. at 317-18, 62 P.3d at 775-76 (internal citations omitted).

The Plaintiffs' breach-of-contract claims allege that the NMCD breached the employment agreement when it terminated the Plaintiffs. As in Barreras v. State of New Mexico Corrections Department, where the plaintiffs' claims were based on rights accorded them in the State Personnel Act and its attendant rules and regulations when they alleged that the NMCD breached their employment contract by terminating them without just cause and by discharging them for illegal reasons, in this case, the Plaintiffs' breach-of-contract claims are based on rights accorded them in the State Personnel Act, because they are alleging that the NMCD accused them of misconduct and terminated them without just cause in violation of their employment agreement.

The Plaintiffs argue that Barreras v. State of New Mexico Corrections Department is distinguishable, because they received favorable decisions from the State Personnel Board, and thus had no reason to appeal the decision, whereas the Plaintiffs in Barreras v. State of New Mexico Corrections Department, did not receive favorable decisions from the State Personnel Board. The Court does not believe that these differences make Barreras v. State of New Mexico Corrections Department distinguishable. Neither the Plaintiffs in Barreras v. State of New Mexico Corrections Department nor the Plaintiffs in this case filed an appeal of the State Personnel Board's decision in district court; instead, the Plaintiffs in both Barreras v. State of New Mexico Corrections Department and this case filed a separate action with the district court, alleging breach of contract. It is inconsequential that the State Personnel Board's decision was unfavorable in Barreras v. State of New Mexico Corrections Department, whereas in this case, the decision was favorable. In both cases, the issue is whether the Plaintiffs could file a separate action in the district court, alleging

breach of contract based on the State Personnel Act.  The Court therefore does not believe that Barreras v. State of New Mexico Corrections Department is distinguishable from this case.

There were several reasons that the Court of Appeals in Barreras v. State of New Mexico Corrections Department found that the State Personnel Act provided the exclusive remedy for the plaintiffs' breach-of-contract claims based on the Act.  The Court of Appeals found that it was unlikely that the New Mexico Legislature, which created the State Personnel Board to adjudicate employer-employee disputes under the Act, intended dual tracks for employees, one administrative and the other by direct action in court, or thought that dual remedies would provide greater economy and efficiency in managing the State of New Mexico's affairs.  See Barreras v. State Corrs. Dep't, 133 N.M. at 316, 62 P.3d at 773.  Similarly, in this case, if the Plaintiffs were allowed to proceed on their breach-of-contract claims in this Court, they would have proceeded both under the State Personnel Act and in court, which would be an inefficient way to resolve disputes.  Allowing them to proceed on these claims also would not promote economy, as the NMCD would have to spend resources to defend itself in two proceedings.

The Court of Appeals in Barreras v. State of New Mexico Corrections Department also compared the remedies available under the State Personnel Act and at common law for breach of contract, and found that the remedies differed in certain respects, but the differences were not significant, because the relief afforded in the State Personnel Act mirrored the core of what was ordinarily available as compensatory damages in a breach-of-contract lawsuit.  See Barreras v. State Corrs. Dep't, 133 N.M. at 317, 62 P.3d at 774.  The Court of Appeals recognized that, to the extent that the State Personnel Act's remedies may in some instances be less than what an employee could recover in court, "such restrictions reflect a legislative effort to balance the economic security needs of public employees with prudential considerations for protecting the public treasury."  Barreras v.

State Corrs. Dep't, 133 N.M. at 317, 62 P.3d at 774.  The Plaintiffs contend that the State Personnel Act is not their exclusive remedy, as they were not made whole in the proceedings under the State Personnel Act, because they were awarded only relief for reinstatement, back pay, and benefits.  The Plaintiffs allege that they suffered attorneys fees and costs, loss of future overtime opportunities, emotional distress, and "having to pay back the unemployment benefits following their reinstatement, and loans."  Response at 10.  The State Personnel Act allows the State Personnel Board to recommend the employee's reinstatement, and may award back pay, but it does not provide for recovery of attorneys fees, of emotional distress damages, or of the other damages that the Plaintiffs' allege.  See NMSA 1978, § 10-9-18.  Although the Plaintiffs did not recover emotional distress damages, attorneys fees, loss of future overtime opportunities, or damages for "having to pay back unemployment benefits . . . and loans," Response at 10, the Court believes that the differences in the remedies reflect the New Mexico Legislature's attempt to balance the interests of employees with the need to protect the public treasury.  If the Plaintiffs were allowed to recover all their alleged damages, the State of New Mexico's coffers might be strained.  The Court therefore believes that there are valid reasons for the differences between the remedies available under the State Personnel Act and at common law for breach of contract.  The Court does not believe that the Plaintiffs' inability to recover all their desired damages in proceedings under the State Personnel Act indicates that the Plaintiffs may pursue a breach-of-contract action in a district court.  See Barreras v. State Corrs. Dep't, 133 N.M. at 317, 62 P.3d at 774 ("We would seriously skew that balance if we were to infer that the legislature intended employees to pursue an alternative, and more expensive, avenue for breach of contract to enforce those same rights.").

In Barreras v. State of New Mexico Corrections Department, the Court of Appeals of New Mexico held that, when an employee's "contractual claim arises from the State Personnel Act, as

well as attendant rules, regulations, and agency personnel policies, the employee's remedies are limited to those set forth in the State Personnel Act." 133 N.M. at 315, 62 P.3d at 772. Because the Court finds that the Plaintiffs' implied contract and their breach-of-contract claims arise from the State Personnel Act, its attendant rules, and regulations, and because the Court finds that Barreras v. State of New Mexico Corrections Department is not materially distinguishable from this case, the Court will dismiss the Plaintiffs' breach-of-contract claims, because the State Personnel Act provides the exclusive remedy. See Whittington v. State Dep't of Pub. Safety, 136 N.M. 503, 510, 100 P.3d 209, 216 (Ct. App. 2004)("In Barreras, this Court held that a discharged state employee whose employment is governed by the State Personnel Act cannot bring a breach of contract action for wrongful termination in district court because the Act provides the exclusive remedy.").

Although the Court need not decide -- because the Court will dismiss the Plaintiffs' breach-of-contract claims because of its exclusivity ruling -- whether the Plaintiffs' breach-of-contract claims would be time-barred if they could bring their claims against the NMCD, the Court nonetheless believes that their claims would be time-barred. NMSA 1978, § 37-1-23 states that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract," and that "[e]very claim permitted by this section shall be forever barred unless brought within two years from the time of accrual." NMSA 1978, § 37-1-23. The Supreme Court of New Mexico has recognized that the term "valid written contract" "incorporates an implied employment contract that includes written terms as set forth in a personnel policy," Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. at 732, 918 P.2d at 11 (citing NMSA 1978, § 37-1-23). The Court has found that the Plaintiffs sufficiently alleged that they had an implied employment contract with the NMCD. See Barreras v. State of N.M. Corrections Dep't, 133 N.M. at 315, 62 P.3d at 772. To bring valid claims for breach of contract against the NMCD, however, the Plaintiffs

-25-

must have brought their claims within two years of the time of accrual.  The Supreme Court of New Mexico has stated: "In a breach of contract action, the statute of limitations begins to run from the time of the breach."  Welty v. W. Bank of Las Cruces, 106 N.M. 126, 127, 740 P.2d 120, 122 (1987).  The Plaintiffs allege that their breach-of-contract claims are timely, because they filed them on March 5, 2010, which was within two years of the effective date of their terminations on March 6, 2008.  The Court has not found any New Mexico cases discussing whether a contract is breached at the time of notice of an employee's termination or at the time of the effective date of termination. It has, however, found cases from other courts discussing when a contract is breached in the context of an employee's termination.

Several courts have found that statutes of limitation in breach-of-employment-contract actions and in statutory actions based on wrongful breaches of employment contracts or wrongful termination begin to run from the time the employer notifies the employee of the termination. See Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)("[T]he . . . alleged discrimination occurred -- and the filing limitations periods . . . commenced -- at the time the [decision denying tenure] was made and communicated to Ricks.  That is so even though one of the effects of the denial of tenure -- the eventual loss of a teaching position -- did not occur until later." (footnote omitted)).[3]  In

---

[3]  In Delaware State College v. Ricks, the plaintiff alleged that the defendant had discriminated against him on the basis of his origin in violation of Title VII and 42 U.S.C. § 1981. See 449 U.S. at 254.  "Title VII requires aggrieved persons to file a complaint with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)."  449 U.S. at 256.  "Determining the timeliness of [the plaintiff's] EEOC complaint, and this ensuing lawsuit, requires us to identify precisely the 'unlawful employment practice' of which he complains."  449 U.S. at 257.  "[T]he only alleged discrimination occurred -- and the filing limitations periods therefore commenced -- at the time the tenure decision was made and communicated to [the plaintiff]."  449 U.S. at 258.  The Supreme Court recognized that the focus is on the time of the discriminatory acts, not the time of the consequences of the acts.  See 449 U.S. at 258.  "We conclude for the foregoing reasons that the limitations periods commenced to run when the tenure decision was made and [the plaintiff] was notified."  449 U.S. at 259.  Courts have

<u>Towson University v. Conte</u>, 862 A.2d 941 (Md. 2004), the Honorable John C. Eldridge's dissent

stated:

> In common law breach of employment contract actions, as well as statutory actions based upon wrongful breaches of employment contracts or wrongful terminations of employment, the general rule is that the running of limitations begins when notice of termination is issued by the employer and not when the termination becomes effective.
>
> For example, in the leading case of <u>Chardon v. Fernandez</u>, 454 U.S. 6 . . . (1981), employees were notified prior to June 18, 1977, that their employment would terminate at effective dates between June 30 and August 8, 1977.  One of these employees on June 19, 1978, brought an action for unlawful employment termination pursuant to a statute which, like Maryland's § 12-202, had a one-year period of limitations.  The United States Court of Appeals for the First Circuit, like the majority today, held that the limitations period did not begin running until the employment termination became effective and the employment actually ended, and that, therefore, the action was timely.  The Supreme Court of the United States, however, reversed, holding that the limitations period began to run when the employee was notified of the termination.  The Court explained that "[t]he fact that they [respondent and other employees] were afforded reasonable notice cannot extend the period within which suit must be filed."  <u>Chardon v. Fernandez</u>, <u>supra</u>, 454 U.S. at 8 . . . .
>
> Another leading Supreme Court case is <u>Delaware State College v. Ricks</u>, 449 U.S. 250 . . . (1980), which was an action by a college professor based upon the alleged unlawful termination of his employment.  The Supreme Court held that the statute of limitations began to run from the time the college professor was notified that he would be denied tenure and would be terminated, and not from the later date when the termination was effective.
>
> Numerous cases, both federal and state, have relied upon the Supreme Court's <u>Chardon</u> and <u>Ricks</u> opinions, as persuasive authority, to hold that the statute of limitations, in an employee's action based upon termination of employment, begins to run from the time the employee received notice of the termination and not from a later date when the termination became effective or the employment actually ceased.  <u>See</u>, <u>e.g.</u>, <u>Cooper v. St. Cloud State University</u>, 226 F.3d 964, 965, 967 (8th Cir. 2000) (Relying upon <u>Delaware State College v. Ricks</u>, <u>supra</u>, the United States Court of Appeals stated: "[W]e hold that the statute of limitations began to run when the college announced its official tenure decision, rather than at the time of

---

analogized to the analysis in <u>Delaware State College v. Ricks</u>, decided in the Title VII context, to breach-of-contract actions.  <u>See</u> <u>Martin v. Special Resource Management, Inc.</u>, 803 P.2d at 1089.

termination"); Holmes v. Texas A & M University, 145 F.3d 681, 684-685 (5th Cir. 1998) (Texas statute of limitations ran from the notice to the university professor that he would be terminated rather than from the later date when the university re-affirmed its decision, with the United States Court of Appeals stating: "Although Ricks concerned the statute of limitations for filing a complaint with the EEOC rather than the Texas limitations period at issue here, we still consider the Ricks opinion persuasive on this point"); Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 133-134 (5th Cir.), cert denied, 506 U.S. 845 . . . (1992) (Employee's action under a state statute for allegedly improper termination); Miller v. International Telephone and Telegraph Corp., 755 F.2d 20, 23 (2d Cir.), cert. denied, 474 U.S. 851 . . . (1985) (citing Chardon v. Fernandez, supra, and Delaware State College v. Ricks, supra, the court stated that the statute of limitations "starts running on the date when the employee receives a definite notice of the termination, not upon his discharge"); Daniels v. Fesco Division of Cities Service Co., 733 F.2d 622, 623 (9th Cir. 1984) ("[A]n employer's liability for wrongful discharge commences upon notice of the employee's termination even though the employee continues to serve the employer after receipt of such notice," citing Delaware State College v. Ricks, although the cause of action before the Ninth Circuit was under California law); Eastin v. Entergy Corp., 865 So.2d 49, 54 (La. 2004) ("[W]e adopt the Ricks/Chardon rule. . . . Consequently, in the instant case, the prescriptive period of one year began to run for each of the . . . Plaintiffs on the dates each of them were notified of their respective terminations"); Martin v. Special Resource Management, Inc., 246 Mont. 181, 185, 803 P.2d 1086, 1088-1089 (1990) (In an employee's breach of contract action, after discussing the Chardon and Ricks cases, the Montana Supreme Court agreed that the employee's "cause of action accrued upon notice of her termination," as "[a]ll the elements needed for a claim of breach . . . were present then" and "[i]t is from the decision to terminate itself which Martin seeks redress") (emphasis in original); Delgado Rodriguez v. De Ferrer Y Otros, 121 P.R. Dec. 347, 357 (Supreme Court of Puerto Rico 1988) (The employee's "cause of action accrued on March 19, 1981, when he was notified of his removal. . . .  The action was time-barred and should have been dismissed," relying upon Chardon v. Fernandez); Webster v. Tennessee Board of Regents, 902 S.W.2d 412, 414 (Tenn. App. 1995) (A state university's Director of Finance and Accounting received notice on September 3, 1991, "that he would be terminated from his employment, effective 30 September 1991, the day on which his contract for services ended.  Plaintiff continued to work until 30 September 1991." After discussing Delaware State College v. Ricks, the court held that limitations began to run on September 3, 1991, and that the action, filed on September 28, 1992, was barred by the one-year statute of limitations); Yoonessi v. State University of New York, 862 F. Supp. 1005, 1014 (W.D.N.Y. 1994), appeal denied, 56 F.3d 10 (2d Cir. 1995), cert. denied, 516 U.S. 1075 . . . (1996) ("[T]he date the decision to terminate was made [is when] the limitations period begins to run ..., or on the date the employee was notified of the decision," citing Chardon and Ricks); Montalban v. Puerto Rico Marine Management, Inc., 774 F.Supp. 76, 77 (D.P.R. 1991) (Applies the principle of Chardon and Delgado Rodriguez v. Nazario de Ferrer, supra, "that all causes of actions for employment termination accrue"

when the employee has notice or knowledge of the termination, and not from the later effective date).

862 A.2d at 969-70 (Eldridge, J., dissenting).[4]  See Halpern v. Bristol Brd. of Educ., 52 F. Supp. 2d 324, 333 (D. Conn. 1999)(recognizing that a "cause of action for breach of contract accrues when the breach occurs," and stating that, "[i]n the instant case, the injury complained of by the plaintiff occurred . . . , when the Board terminated her employment, allegedly in breach of her employment contract[;] [a]ccordingly, that is when her breach of contract action accrued").

The Court also found several cases mentioning that the statute of limitations for a breach-of-contract claim might begin to run on the effective date of termination. See Usine A Glance Nationale, S.A. v. Pepsi Cola Mktg. Corp., 206 F. Supp. 2d 253, 255 (D. Puerto Rico 2002)("Under the most generous interpretation in [the plaintiff's] favor, the statute of limitations began to run on

---

[4] The Supreme Court of Oregon has held that a plaintiff's claim for wrongful discharge does not accrue until the end of the employment relationship -- the effective date of termination -- because a plaintiff cannot prove her claim until discharge occurs.  See Stupek v. Wyle Laboratories Corp., 963 P.2d 678, 681-82 (Or. 1998).  In coming to this holding, the Supreme Court of Oregon recognized that there was a "split . . . on [the] issue."  963 P.2d at 682 (citing Chardon v. Fernandez, 454 U.S. 6 (1981)(stating the plaintiffs' unlawful employment practice claims, brought under 42 U.S.C. § 1983, accrued when they learned of their pending termination, because the operative discriminatory act was the decision to terminate employment); Del. State Coll. v. Ricks, 449 U.S. 250 (1980)(stating the plaintiff's employment discrimination claim based on a denial of tenure, brought under Title VII, accrued when the tenure decision was made, not on the plaintiff's last day of work, because that was when the discriminatory act complained of occurred); Romano v. Rockwell Int'l, Inc., 926 P.2d 1114, 1125 (Cal. 1996)(stating a wrongful-discharge claim accrues when the actual dismissal occurs because, before the actual termination, plaintiff has not suffered any appreciable harm); Martin Marietta Corporation v. Lorenz, 823 P.2d 100, 115-16 (Colo. 1992)(stating the employee's common-law wrongful-discharge claim did not accrue until his last day on the job, because he did not suffer any injury until he was deprived of his job); Walch v. Univ. of Mont., 861 P.2d 179, 182-83 (Mont. 1993)(stating that common-law wrongful-discharge claim accrues at time of notice, because the employer's decision causes the end result); Weber v. Moses, 938 S.W.2d 387, 391-92 (Tenn. 1996)(stating that tort of retaliatory discharge accrues at time of notice, because the actual termination is "nothing more than the consequence" of employer's decision)).

February 12, 1992, the effective date of termination.  Since it filed suit on May 7, 1997, the breach of contract claim . . . is barred by the five-year statute of limitations, . . . ."); Eagle Nation, Inc. v. Mkt. Force, Inc., 180 F. Supp. 2d 752, 757 n.5 (E.D.N.C. 2001)("In any event, even assuming the termination did not become effective until late July 1997, 90 days after the date that defendants received the termination letter, plaintiff's action would still be barred by the three-year statute of limitations because it was not filed until August 2000."); AKA Distrib. Co. v. Whirlpool Corp., 948 F. Supp. 903 (D. Minn. 1996)("[The plaintiff] filed its complaint against [the defendant] in December 1993, more than four years after both the announcement and the effective date for termination of production.  Thus, the court concludes that [the plaintiff's] breach of contract claim is barred by the statute of limitations.").

Each Plaintiff alleges that, on March 3, 2008, he received a Notice of Final Action ("NFA") from the NMCD terminating his employment effective March 6, 2008.  See Eoff Complaint ¶ 26, at 4; Nguyen Am. Complaint ¶ 28, at 4; Soveranes Complaint ¶ 26, at 4.  The Plaintiffs argue that their claims are not time-barred, because they were filed within two years of the effective date of their terminations.  In the cases that mentioned that the statute of limitations might run from the effective date of termination, the courts did not analyze whether, in a breach-of-contract action, a statute of limitations begins to run from the effective date of termination.  Instead, the courts appeared to state merely that, even if the statute of limitations began to run from the effective date of termination, the cause of action was barred.  On the other hand, other courts have found that, because an employee can first seek legal redress after an employer notified the employee of its decision to terminate, in a breach-of-employment-contract action, the statute of limitations begins to run when the employer notifies the employee of his or her termination and not on the effective date of termination.  These courts appear to have conducted a more thorough analysis, analogizing

to Supreme Court precedent.

The Court has identified three reasons that suggest the statute of limitations begins to run from the time the employer notified the employee of the termination.  First, the alleged wrong occurs at the time of the allegedly wrongful decision; and the statute of limitations should begin when the employee is aware of that allegedly wrongful decision.  See 31 Williston on Contracts § 79:14 (4th ed.)("[O]rdinarily, in [a contract] action . . . , accrual occurs [when] there is a breach of contract, with some courts . . . stating that accrual occurs when the promisee discovers or should have discovered the breach, and others stating that accrual occurs upon breach, whether or not the promisee is . . . aware of the breach." (footnotes omitted)).  The cases that the Court has reviewed do not appear to find that the statute of limitations begins to run when there is an allegedly wrongful decision, regardless whether the employee is aware of the allegedly wrongful decision.  The Court believes that, in breach-of-contract actions involving an employee's termination, the statute of limitations should not begin to run until the employee is aware of the allegedly wrongful decision, because an employee would not be aware of the possible need to file suit until that time.  Second, the termination itself is one of the effects of the wrongful decision, but is not the wrong itself; the termination is a consequence and not the wrong.  See Del. State Coll. v. Ricks, 449 U.S. at 257-58 ("It appears that termination of employment at Delaware State is a delayed, but inevitable, consequence of the denial of tenure.").  Third, all of the elements needed for a claim of breach of contract are present when the allegedly wrongful decision is made.  See Martin v. Special Res. Mgmt, Inc., 803 P.2d at 1089 ("[The plaintiff's] cause of action accrued upon notice of her termination.  All the elements needed for a claim of breach of the implied covenant of good faith and fair dealing, if present at all, were present then.  It is from the decision to terminate itself which Martin seeks redress.").  The Court believes the Supreme Court of New Mexico would find these

reasons persuasive and find the statute of limitations begins when the employee receives notice of termination.

The Court also believes that other areas of the law support the analysis of the courts that have found that the statute of limitations begins to run when the employer notifies the employee of his or her termination.  For example, when an employee receives notice of termination, the employee can attempt to seek injunctive relief and does not need to wait until the termination itself.  See Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 780 n.16 (3d Cir. 2007)(addressing a suit for unlawful termination in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 to 1461, and stating "once an affected employee receives notice that he or she will be terminated, the participant can file for an injunction to prevent the termination if it is due to illegal motives"); Local 818 of Council 4 AFSCME, AFL-CIO v. Town of E. Haven, 614 A.2d 1260, 1262 (Conn. Super. Ct. 1992)(addressing case in which plaintiffs filed an application for a preliminary injunction to prevent them from being terminated based on notices they received advising them that their employment would soon end).  The Court therefore believes that the analysis of the courts that find that the statute of limitations begins to run on the date of notice of termination, not the date of effective termination, is more persuasive.  When the NMCD notified the Plaintiffs of their terminations, it allegedly breached an implied employment contract; therefore, the date the NMCD notified the Plaintiffs of their termination was the time of the breach.  The Plaintiffs allege they received notice of their terminations on March 3, 2008.  Because the statute of limitations begins to run at the time of the breach, the Court believes that the Plaintiffs' breach-of-contract claims were not timely filed, because they were not filed within two years of the alleged breach.

The Plaintiffs' Response also alleges that their lawsuits were timely filed, because although the notices of their terminations were dated March 3, 2008, they were postmarked March 4, 2008,

so the Plaintiffs could not have received them until March 5, 2008.  The Plaintiffs' Complaints,

however, allege that they received notice of their terminations on March 3, 2008.  There are no

allegations about postmarks and dates of receiving.  The Court must take the Complaints' allegations

as true, not naked assertions in the briefing.  See Barrett v. Orman, 373 F. App'x 823, 824 (10th Cir.

2010)("We accept as true well-pleaded factual allegations, but also consider whether 'they plausibly

give rise to an entitlement to relief.'" (citation omitted)).  There are three dates from which the

statute of limitations could run.  The Plaintiffs allege that on March 3, 2008, they received notice

of their terminations.  In their Response, however, they also allege that the notices were not

postmarked until March 4, 2008, and that they did not receive the notices in the mail until on or after

March 5, 2008.  It appears that most courts who have analyzed the issue have found that a statute

of limitations for a breach-of-contract action begins to run on the date the employer notifies the

employee of his or her termination.  The Court believes that the Supreme Court of New Mexico

would follow these cases.  Because the Plaintiffs allege they received notice of their terminations

on March 3, 2008, this date was the time of breach, and when the statute of limitations for the

Plaintiffs' breach-of-contract actions began to run.  The date the Plaintiffs received the notices in

the mail does not alter the likelihood that their claims were not timely filed, given that they have

alleged in their Complaints they received notice on March 3, 2008.  The Court therefore believes

that the Plaintiffs' breach-of-contract claims are time-barred.[5]

## II.   THE COURT WILL DISMISS THE PLAINTIFFS' BREACH-OF-IMPLIED-COVENANT-OF-GOOD-FAITH-AND-FAIR-DEALING CLAIMS.

The NMCD argues that the Court should dismiss the Plaintiffs' breach-of-implied-covenant-

---

[5] Because the Court has found that the Plaintiffs' breach-of-contract claims are barred by the State Personnel Act, it would be futile for the Plaintiffs to amend their Complaints to clear up the uncertainty regarding the date they received notice of their terminations.

of-good-faith-and-fair-dealing claims, regardless whether they sound in tort or contract.  The NMCD argues that, to the extent the Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing are brought in contract, they are barred under Barreras v. State of New Mexico Corrections Department, and the Court should dismiss them.  It also argues that, to the extent that the Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing are brought in tort, sovereign immunity bars them under the Tort Claims Act.

The Plaintiffs respond, arguing that they "intended to plead the implied covenant claims as a contract, not a tort claim."  Response at 8.  The Plaintiffs allege that the Court should not dismiss their cause of action in contract for implied covenant of good faith and fair dealing, because the State Personnel Board's decision did not make them whole.  They argue that they pursued this claim in the district court so that they could be made whole.

New Mexico courts have recognized a cause of action for breach of the covenant of good faith and fair dealing sounding in contract.  "New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract."  Sanders v. FedEx Ground Package Sys., Inc., 144 N.M. at 452, 188 P.3d at 1203 (citations omitted).  "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement."  Watson Truck & Supply Co., Inc. v. Males, 111 N.M. at 60, 801 P.2d at 642 (citations omitted).

The Supreme Court of New Mexico has also recognized that tort recovery for breach of the covenant of good faith and fair dealing is permissible only where a special relationship exists, such as between an insurer and the insured.  See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.  See Heimann v. Kinder-Morgan CO2 Co., L.P., 140 N.M. at 558, 144 P.3d at 117 ("The claim of breach of good faith and fair dealing sounds in contract, at least when no

'special relationship' such as that between an insured and insurer exists."). The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position." Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857 (internal quotation marks and citations omitted).

Although the Plaintiffs assert that they intended to plead their implied-covenant-of-good-faith-and-fair-dealing claim in contract, their Complaints do not make this clear. The Court will therefore address whether their implied-covenant-of-good-faith-and-fair-dealing claims are based in contract or tort. In City of Raton v. Arkansas River Power Authority, the Court found that the City of Raton's claim for breach of the covenant of good faith and fair dealing was based partially in contract and partially in tort. See 611 F. Supp. 2d at 1193. The part that was based in tort was predicated on allegedly tortious conduct, i.e., misrepresentations. See 611 F. Supp. 2d at 1210.

> The City of Raton's claim for damages based on an alleged breach of the implied covenant of good faith and fair dealing is based on ARPA's alleged "misrepresent[ation] [of] the costs of the Project, the progress of the Project, its economic feasibility and its superiority to other alternatives available to the City and Member Municipalities for acquiring power." Given the Colorado case law on point, it is difficult to escape the conclusion that, like the rescission claim based on misrepresentation, the claim for breach of the covenant of good faith and fair dealing, when based on the same misrepresentation, does, or at least could, sound in tort, and is therefore barred under the Governmental Immunity Act[, Colo. Rev. Stat. Ann. § 24-10-106 (West 2008)].

> The Court emphasizes that, under the Governmental Immunity Act, a court focuses not on the form of a claim, but on whether it could be pled in tort. While causes of action for breach of the covenant of good faith and fair dealing are recognized as contract remedies, the City of Raton has attempted to frame the claim up in terms of a contract theory, but has articulated a harm arising out of misrepresentation, which is tortious conduct.

> Even if it Governmental Immunity Act did not bar the claim for breach of the covenant of good faith that is based on misrepresentation, the Court would dismiss the tort-based aspect of the claim under rule 12(b)(6), because New Mexico and Colorado do not allow a cause of action in tort for breach of the covenant of good faith except in insurance contracts, or possibly contracts that are adhesive in nature.

The complaint contains no allegations that would suggest that such a relationship exists between ARPA and the City of Raton.

Nevertheless, the City of Raton also contends that ARPA breached the covenant of good faith and fair dealing by "intentionally and wrongfully using the Organic Contract and Power Supply Agreement to the detriment of the City by seeking to hold the City responsible for massive cost overruns and additional bond issues that the City never approved." Such allegations arise out contractual duties, rather than duties recognized in tort law. The Supreme Court of New Mexico has explained: "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Watson Truck & Supply Co., Inc. v. Males, 111 N.M. at 60, 801 P.2d at 642 (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." Id. Colorado law similarly recognizes "that every contract contains an implied duty of good faith and fair dealing." Amoco Oil Co., v. Ervin, 908 P.2d 493, 498 (Colo.1995). Moreover, "violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract." City of Golden v. Parker, 138 P.3d 285, 292 (Colo. 2006).

Noting that, in determining whether a claim lies in tort, a court must disregard labels and examine the nature of the harm and the relief sought, the Court finds that a claim for breach of the covenant of good faith and fair dealing may survive governmental immunity as long as it is not based on factual allegations that would make it capable of being pled as a tort. As part of Count Five of its FAC, the City of Raton lists a breach of contractual duty that arises out of the good faith performance doctrine. The remaining question, therefore, is whether the City of Raton has pled that aspect of its breach-of-covenant claim sufficiently to survive dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure. Under rule 12(b)(6), a court must determine "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). Accepting the City of Raton's allegations as true, the Court finds that it has stated a claim based in contract. The Court will therefore not dismiss that portion of the claim.

611 F. Supp. 2d at 1210-11 (footnotes and citations to the record omitted). In their Complaints, the Plaintiffs allege that the NMCD breached the implied covenant of good faith and fair dealing when it accused the Plaintiffs of misconduct and terminated them without just cause. As in City of Raton v. Arkansas River Power Authority, where the Court found that allegations that the Arkansas River Power Authority breached the covenant of good faith and fair dealing by "intentionally and

wrongfully" using the contract "to the detriment of the City by seeking to hold the City responsible for massive cost overruns and additional bond issues that the City never approved" arose out of contractual duties, rather than duties recognized in tort law, 611 F. Supp. 2d at 1210, the Plaintiffs' allegations that they were terminated without just cause arise in contract, not tort, as they are based on the rights that the State Personnel Act allegedly accorded them, see Barreras v. State of N.M. Corrs. Dep't, 133 N.M. at 318, 62 P.3d at 775 (recognizing that the Plaintiffs claims arose out in contract, not tort, based on the rights accorded them in the State Personnel Act when they alleged that they were terminated without just cause and for illegal reasons).  Even if the Plaintiffs pled their implied-covenant-of-good-faith-and-fair-dealing claims as tort claims, New Mexico law does not allow a cause of action in tort for breach of the covenant of good faith and fair dealing except in insurance contracts, or possible contracts that are adhesive in nature, and the Complaints contain no allegations that would suggest that such a relationship exists between the NMCD and the Plaintiffs. See City of Raton v. Ark. River Power Auth., 611 F. Supp. 2d at 1210 n.6 (stating that, even if the Governmental Immunity Act did not bar the breach of implied covenant claim, "the Court would dismiss the tort-based aspect of the claim . . . , because New Mexico . . . do[es] not allow a cause of action in tort for breach of the covenant of good faith except in insurance contracts, or possibly contracts that are adhesive in nature.").  The Court thus finds that the Plaintiffs' claims for breach of implied covenant of good faith and fair dealing sound in contract and not in tort.

The Court notes that, even if the Plaintiffs' claims for breach of implied covenant of good faith and fair dealing sound in tort, and even if the Plaintiffs sufficiently pled allegations that would allow their causes of action to proceed, the NMTCA bars their claims.  The NMTCA provides: "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom

Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978."  NMSA 1978, § 41-4-4.

The only waiver of immunity in the NMTCA that appears to apply to this case is the waiver in section 41-4-12.  Section 41-4-12 waives the immunity granted in certain situations involving law enforcement officers.

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978, § 41-4-12.  The NMTCA defines "law enforcement officer" as

> a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

NMSA 1989, § 41-4-3D.  The Plaintiffs have sued only the NMCD.  The NMCD is not a law enforcement officer under the plain language of the definition in the NMTCA.  The Court has not found any New Mexico case that has expanded the definition to include the NMCD, and the Court does not think that the Supreme Court of New Mexico would do so if faced with the issue.  See United Rentals Nw., Inc. v. Yearout Mech., Inc., 148 N.M. 426, 237 P.3d 728 (2010)("The first guiding principle in statutory construction dictates that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that [w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."  (internal quotation marks and quotation omitted)(alteration in original)).  Also, the New Mexico courts have found that corrections officers are not "law enforcement" officers.  See Callaway v. N.M. Dep't of Corrs., 117 N.M. 637, 641, 875 P.2d 393, 397 (Ct. App. 1994)(holding

-38-

that "corrections officers are not law enforcement officer under Section 41-4-3(D)," because their principal duties are to hold people in custody who have already been convicted, rather than merely accused of a crime, because the maintenance of public order relates to a public setting, not a penitentiary setting, and because although correctional officers may have the supplemental power to arrest, it is not one of their principal duties).  The Plaintiffs are corrections officers.  <u>See</u> Soveranes Complaint ¶¶ 1, 11, at 1, 2; Nguyen Am. Complaint ¶¶ 1, 12, at 1, 2; Eoff Complaint ¶¶ 1, 11, at 1, 2.  If the Plaintiffs would remain immune from tort liability under the law-enforcement officer exception, it would seem their employer should as well.  The New Mexico Legislature therefore did not waive the NMCD's immunity, and, if the Plaintiffs had successfully alleged a cause of action in tort for breach of the covenant of good faith and fair dealing, the Court would dismiss these claims, as sovereign immunity under the NMTCA would bar them.

The Court finds that it should dismiss the Plaintiffs' causes of action in contract for breach of implied covenant of good faith and fair dealing.  The Plaintiffs allege that the NMCD breached the implied covenant by falsely accusing the Plaintiffs of misconduct and terminating them without just cause in violation of their employment agreement.  These claims are based on the rights that the Plaintiffs allege they were accorded under the implied employment agreement that the State Personnel Act, and its attendant regulations and policies, created.  <u>See</u> <u>Sanders v. FedEx Ground Package Sys., Inc.</u>, 144 N.M. at 452, 188 P.3d at 1203 ("New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract.")(citations omitted).  A claim for breach of the implied covenant of good faith and fair dealing is not an independent cause of action, distinct from the alleged implied employment contract that the State Personnel Act created.  <u>See</u> <u>Barreras v. State of N.M. Corrs. Dep't</u>, 133 N.M. at 318, 62 P.3d at 775 ("If this were an independent lawsuit in tort,

instead of a . . . reflection of the State Personnel Act, we would rely heavily on Gandy[v. Wal-Mart Stores, Inc.] in considering whether the Act allowed it.").  The Court cannot detect any allegations in the Complaints that lead it to believe that the alleged implied employment contract is based on something other than the State Personnel Act, and its attendant rules, regulations, and personnel policies.  Furthermore, in their Response, the Plaintiffs state "that the State Personnel Act, its attendant regulations, policies and procedures constitute an '[sic] implied employment contract between state employees and their respective employers[;] [t]his is why the [breach-of contract and implied-covenant-of-good-faith-and-fair-dealing] claims in Counts I & II of the Complaints were filed."  Response at 6.  Because the Plaintiffs' claims are based on the "rights accorded [the] Plaintiffs in the State Personnel Act and [its] attendant rules, regulations, and personnel policies," the "State Personnel Act provides the exclusive remedy for the Plaintiffs' [claims] based on [the] Act."  Barbers v. State of N.M. Corrs. Dep't, 133 N.M. at 318, 62 P.3d at 775.  The Court will therefore dismiss the Plaintiffs' breach-of-implied-covenant-of-good-faith-and-fair-dealing claims.

**IT IS ORDERED** that: (i) the Defendant's Motion to Dismiss Plaintiffs' State Law Claims Under Rules 12(b)(1) and 12(b)(6) and Supporting Memorandum, filed July 16, 2010 (Doc. 8), is granted; and (ii) the Defendant's Motion to Dismiss Plaintiff Nhan Nguyen's New Mexico Human Rights Act Claim Under Rules 12(b)(1) and 12(b)(6) and Supporting Memorandum, filed July 27, 2010 (Doc. 9), is granted.

_____
UNITED STATES DISTRICT JUDGE

-40-

*Counsel:*

Gilbert J. Vigil
Albuquerque, New Mexico

   *Attorney for the Plaintiffs*

James P. Sullivan
Frank D. Weissbarth
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

   *Attorneys for the Defendant*